*535 COLEMAN, Judge.
Colleen N. Brown (mother) appeals from a ruling of the trial court denying her request for a change in custody of the two children bom of her marriage to Mark R. Brown (father). On appeal, she contends the court erroneously failed (1) to award her sole legal custody or joint legal custody with father; and (2) to order father to discontinue home-schooling the children. For the reasons that follow, we disagree and affirm the ruling of the trial court.

BACKGROUND

In accordance with familiar principles, we summarize the evidence in the light most favorable to the prevailing party below. See Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995). The parties have two children, a daughter Danielle born in 1987 and a son Christopher born in 1991. When they divorced in 1995, they agreed upon joint legal and physical custody of the children. Soon thereafter, a dispute arose about Danielle’s enrollment in Faith Christian School and mother’s shared custody when she planned to live with her paramour. Following a hearing, the trial court awarded sole legal custody to father but ruled that the parties would jointly decide where to enroll the children in school.
When mother chose not to have the children attend Faith Christian School, father decided to home-school the children, to which mother objected. Following a hearing on August 21, 1996, the trial court modified its earlier ruling to provide that father had the authority to decide “where and in what manner the parties’ minor children are to be schooled.” Father’s home-school curriculum was approved by the Director of Pupil Services for the county.
On August 13, 1997, following one year of father’s homeschooling, mother moved for sole or joint legal custody of the children, or alternatively, for an order directing that the children attend a specific public elementary school. Mother complained that father excluded her from participating in her children’s lives. Mother contended that the home-schooling, *536 the assigned homework, and the children’s extra-curricular activities detracted from her scheduled time with the children. She conceded, however, that she supported the children’s participation in some of the extra-curricular activities. Father explained that although some of the extra-curricular activities occurred during mother’s scheduled time with the children, typically the schedules were not established until after enrollment in the activities. Further, father told the children that he could only guarantee their attendance at these activities during his scheduled time with them.
Although father initially denied mother’s request to assist in the home-schooling, he invited her to visit the classroom in early 1997. On that occasion, the tension between the parents detracted from the learning environment, and father determined that in the future it would be best if mother were not present during classroom time. According to his testimony, father encouraged mother’s participation in other homeschooling events and suggested that her presence would benefit the children. Mother conducted a field trip and held a monthly art class for several children, including Danielle and Christopher. Father testified that he encouraged mother to be involved with these groups and explained that he initially had not included her name on their home-schooling group’s phone lists because mother previously had aired their personal problems to other parents.
Father denied allegations that he forbade the children from attending mother’s church. Father testified that he merely wanted custody of them on Sundays to ensure that they attended church on a regular basis and in a consistent program.
Mother testified that she ended her relationship with her paramour following the court’s April 1996 ruling and had no contact with him since he moved out. She also testified that no other man to whom she was not related had been “under my roof while the children were in my custody.”
Each party accused the other of inappropriate parenting. As an example of alleged inappropriate discipline, mother *537 testified that father made Danielle stand in the corner on one occasion for an hour and forty minutes until she apologized for being disrespectful. Father offered testimony that mother inappropriately involved the children in the parties’ disputes.
Although the children expressed a desire to attend public school, they also praised home-schooling and performed very well in that environment.
Mother offered the expert testimony of Dr. Zuckerman, a licensed clinical psychologist. Dr. Zuckerman supported mother’s complaints regarding the children’s school environment and its detrimental impact on her relationship with the children. He opined that the children would be better off in a school where both parents felt welcome and over which the parental conflict was not an issue. However, Dr. Zuckerman testified that he was not in a position to make a recommendation regarding child custody.
Father offered the testimony of Dr. Brian Ray, who qualified as an expert in the field of education. He opined that the children’s “home-schooling is working very well.” He agreed that it was important for mother to be as involved as possible in their schooling. He stated that home-schooling would provide both parents more time to be with their children, which is especially important in divorce situations, and that home-schooling permitted father to integrate his personal “religious philosophical view” into their education, both of which were likely to help the children avoid the negative aspects of peer pressure. Finally, he opined that the children engaged in sufficient activities outside the home classroom to develop necessary social skills.

ANALYSIS

A party seeking to modify an existing custody order bears the burden of proving that a change in circumstances has occurred since the last custody determination and that the circumstances warrant a change of custody to promote the children’s best interests. See Keel v. Keel, 225 Va. 606, 611-12, 303 S.E.2d 917, 921 (1983); see also Code § 20-124.2(B). *538 In deciding whether to modify a custody order, the trial court’s paramount concern must be the children’s best interests. See Farley v. Farley, 9 Va.App. 326, 327-28, 387 S.E.2d 794, 795-96 (1990). However, the trial court has broad discretion in determining what promotes the children’s best interests. See Eichelberger v. Eichelberger, 2 Va.App. 409, 412, 345 S.E.2d 10, 12 (1986).
Code § 20-124.3 specifies the factors a court “shall consider” in determining the “best interests of a child for ... custody or visitation.” Although the trial court must examine all factors set out in Code § 20-124.3, “it is not ‘required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.’ ” Sargent v. Sargent, 20 Va.App. 694, 702, 460 S.E.2d 596, 599 (1995) (quoting Woolley v. Woolley, 3 Va.App. 337, 345, 349 S.E.2d 422, 426 (1986)). As long as evidence in the record supports the trial court’s ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal. See Alphin v. Alphin, 15 Va.App. 395, 405, 424 S.E.2d 572, 578 (1992).
Here, the trial court expressly considered the “best interests” of the children. Contrary to mother’s contention, the court did not elevate the alleged right of father, the children’s legal custodian, to home-school the children over the children’s best interests. We cannot say on this record that the evidence fails to support the trial court’s decision to maintain the status quo, by denying mother’s request for sole or joint legal custody or by refusing to prohibit father from home-schooling the children. Although the parties exercised joint physical custody, father had sole legal custody of the children, and mother bore the burden of proving a material change in circumstances requiring a change in legal custody to safeguard the best interests of the children.
The evidence, viewed in the light most favorable to father, supports the trial court’s finding that mother failed to meet that burden. The children were performing well academically and socially in a home-schooling program approved by Loudoun County. Although initially resistant to mother’s involve *539 ment in the children’s education, father made some effort to keep her apprised of their progress and agreed that it would be “beneficial for [mother] to come [to their class] on occasion.” The trial court found that the parties had made the children “the battlefield,” they could not communicate, and they could not share any decision-making authority over the children. Unable to find that father’s home-schooling efforts were inferior to the public school alternative, the trial court determined that the children’s best interests would be advanced by continuing with the home-schooling.
We also find that the trial court’s decision was not an abuse of discretion, plainly wrong, or unsupported by the evidence. In light of our clearly defined standard of review, it is immaterial that the record, if viewed in the light most favorable to the mother, may support the relief she seeks. The trial court rather than the appellate court “ascertains a witness’ credibility, determines the weight to be given to [the witness’] testimony, and has the discretion to accept or reject any of the witness’ testimony.” Street v. Street, 25 Va.App. 380, 388, 488 S.E.2d 665, 668 (1997) (en banc). The trial court was entitled to reject the testimony of Dr. Zuckerman, who opined that home-schooling was having a negative effect on the children’s education, in favor of the testimony of Dr. Ray, who opined that “home-schooling is working very well” for the parties’ children. See id. at 387-89, 488 S.E.2d at 668-69.
Further, the court was not required to award mother sole or joint legal custody or to prohibit home-schooling simply because the children expressed a preference to attend public school. “Although a child’s preference ‘should be considered and given appropriate weight,’ it does not control the custody determination and is just one factor to be considered.” Sargent, 20 Va.App. at 702, 460 S.E.2d at 599 (quoting Bailes v. Sours, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986)).
Finally, contrary to mother’s contention, the record, viewed in the light most favorable to father, does not support her contention that the trial court erroneously elevated “stability and continuity” over the children’s best interest. The *540 record establishes that the trial court considered other statutory factors, including the needs and preferences of the children, the relationship between the children and their parents, and the parents’ inability to communicate and cooperate. Nevertheless, the evidence supports the trial court’s finding that the children would benefit from a ruling preserving stability and continuity and that such was in their best interest. The issue in dispute here was the children’s education. The record established that Christopher’s only experience was in home-schooling, that both children had been home-schooled for almost two years at the time of the hearing, and that home-schooling permitted each parent to spend a greater amount of time with the children. Accordingly, we find that the trial court did not place undue emphasis on the children having stability and continuity in their lives.
For the foregoing reasons, we affirm the trial court’s ruling. We deny father’s request for an award of attorney’s fees and costs on appeal.

Affirmed.